Ex parte DANZIGER.

No. 7808.

District Court, S. D. California, C. D.

March 18, 1948.

A. Brigham Rose, of Los Angeles, Cal., for petitioner.

James M. Carter, U. S. Atty., and Ernest A. Tolin, Asst. U. S. Atty., both of Los Angeles, Cal., for the Government.

HALL, District Judge.

I have examined the transcript of record on appeal with particular reference to the assignment of errors on appeal. I have also examined the petitioner's brief and reply brief on appeal in the Circuit Court, the petition for rehearing, and supplement to petition for rehearing, and the briefs of both parties thereon, the petition for certiorari to the Supreme Court and the supplemental transcript of record filed therewith, as well as the supporting and opposing briefs thereon. And it appears, with one exception to be noted hereafter, that the matters and things raised in the petition for writ of habeas corpus, and at the hearing, and argument and in the briefs were previously raised by petitioner in his appeal proceedings either in the Circuit Court or in the Supreme Court.

In the decision of the Circuit Court of Appeals (9 Cir., 161 F.2d 299) affirming petitioner's conviction, the court indicated it had considered all of the points and things raised by petitioner, but not specifically discussed in the opinion, and found no error.

■ The petition for rehearing was denied by the Circuit Court without opinion, as was the petition for certiorari by the Supreme Court. 68 S.Ct. 81. While it is true that mere denial of a petition for certiorari is not to be deemed an affirmance of all of the propositions of law which may have 'been stated or touched on in the lower court's opinion, I cannot agree with petitioner that such denial indicates no consideration of the matters and things covered in the petition. But I must on the contrary, hold that such denial was made upon appropriate judicial consideration, and is the law of the case as to all points raised in either or both the petition for rehearing and petition for certiorari.

■ Whatever the boundaries are of the power of a District Court under the writ of habeas corpus (see Sunal v. Large, 332 U.S. 174, 175, 67 S.Ct. 1588, and its dissents, for a general discussion of the necessity of keeping such boundaries flexible) it cannot be said that there lies within such boundaries the power of a United States District Court to act as a reviewing court on a habeas corpus proceeding to both the Circuit Court of Appeals and the Supreme Court on matters and things previously considered and decided by such Appellate Courts on appeal in a specific case. And that is what the petitioner here asks, with a view to getting a different result, which amounts to a request for a reversal in the District Court of both the Circuit Court of Appeals and the Supreme Court.

■ The new thing brought into these proceedings is a statement by the trial judge after the conclusion of the trial, and after the notice of appeal, to the general effect that it had become evident to him

from an early stage of the trial that he was practically dealing with a "guilty plea" because of admissions of the defendant which had been reduced to writing, and introduced in evidence.

If such statement indicated error on the part of trial judge during the trial, surely the petitioner waived it when he did not either include it as an assignment of error, or even bother to print it in the record on appeal of which, incidentally, there were over 1800 printed pages, which would indicate that petitioner, himself a lawyer, and his learned counsel, were not without assiduity and diligence, to say nothing of the petition for writ of prohibition, the appeal, the petition for rehearing, and the petition for certiorari. But even if it were not waived, I can see no violation of due process, or of any other constitutional provision or of law, so as to entitle the petitioner to a writ of habeas corpus. The statement was made after the trial had concluded, and judgment and sentence had been pronounced, and after appeal had been taken. It was made on a hearing in connection with bail, and as I read the record, was merely a way of emphasizing the importance of the defendant's admissions in connection with the refusal of the trial judge to grant bail on appeal.

Something should also be said about the other points made by the petitioner, which I suggested should be discussed in the briefs and on arguments.

■ One was the asserted error of the trial judge in refusing to grant petitioner's motion for a continuance based on the affidavit of petitioner filed at the commencement of the trial and the contention that such asserted error was not ruled on by the higher courts, because such affidavit was not contained in the transcript of record before the Circuit Court of Appeals, although it was in the supplemental record before the Supreme Court.

It must be pointed out that the petitioner never asked for a continuance after the filing of the affidavit, either at the conclusion of the government's case, when all of its evidence had been disclosed to petitioner, or at any other time, on the ground that the name or location of any witness,

or of any evidence, not then available to him, either in any foreign countries or elsewhere, might aid in his case.

■ Moreover, the petitioner did raise the point before the Circuit Court of Appeals. In his brief to the Circuit Court of Appeals appears the following (pp. 84–85):

"Specifications of Error

"Appellants rely upon each and every one of their 35 Assignments of Errors set forth at pages 175 to 377 of the printed Record, which are set out in the appendix herein, commencing at page 3 to and including page 100. In addition to the errors thus specified, appellants have also designated in their statement of points upon which they intend to rely (R. 1844–1846) the following:

" 'In addition to said assignment of errors, appellants herein urge the following additional points:

" '(2) Error in denying the motion of the defendant Jacob Morris Danziger for a continuance by reason of the inaccessability of material records in countries foreign to the United States involved in the transactions specified in the indictment and to the impossibility of production of witnesses residing in foreign countries whose testimony would be material to the defendants.' "

It was petitioner's record. He made it. He was its architect and builder. He designated the things which it should contain. And if he did not think enough of the point, by putting his affidavit in support of it in the record, he cannot now have still another bite at the apple of judicial review by taking advantage of his own mistake in a habeas corpus proceeding.

It was also urged that petitioner was indicted by a grand jury upon which there were no women, and which accordingly was selected with "systematic and intentional exclusion" of some "economic, social, religious, racial, political and geographical groups of the community." Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 985, 90 L.Ed. 1181, 166 A.L.R. 1412, to wit, women Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261.

The petitioner's complaint is that the "definitive rulings" on this point had not "crystalized" within the ten days allowed to challenge the indictment from the date of the arraignment, allowed by Sec. 556a, Tit. 18 U.S.C.A., nor at any time before the decision of the Circuit Court of Appeals on his appeal.

Were this point before me de novo, I would be compelled to give heed to the fact that it had been raised in this District many times and had been considered settled for many years prior to the decision of the Supreme Court in the Ballard case, (a criminal case), that the exclusion of women from juries in the Federal Court in this District was no ground for challenging the legality of either a grand jury or a trial jury (see D.C., 35 F. Supp. 105, Oct. 8, 1940, and authorities there cited) and that to do so would be as futile as raising any one of hundreds of points raised before trial judges which have been settled by law and decision to the point where they are considered frivolous by the bench and bar, and that no authoritative precedent existed prior to the Ballard decision by the Supreme Court holding jury panels to be void by the exclusion of women, (California decisions had been to the contrary) and that there has not been and is not now any written statute or rule, either Federal or State which specifically requires women not to be excluded from jury selection, and that neither the Thiel case nor the Ballard case had been decided by the Supreme Court either at the time of the indictment, December 30, 1941, or within ten days from the date of arraignment of defendant, three years later, on the 20th of November, 1944. The Thiel case was not decided by the Supreme Court until May 20, 1946, (eighteen months after arraignment) nor the Ballard case until December, 1946, (over two years after petitioner's arraignment) nor the Zap case, Zap v. United States, 330 U.S. 800, 67 S.Ct. 857, until March 3, 1947, nor the Bell case, Bell v. United States, 9 Cir., 159 F.2d 247, by the Circuit Court, until February 4, 1947.

In the Ballard, Bell, and Zap cases, the court held that the objection had been specifically raised within the ten day period of Sec. 556a of Tit. 18; and in the Thiel case, that it was raised within the appropriate time for the objection to be made to the petit jury panel in civil cases.

The effect of these decisions is that if the point is not so specifically raised within the statutory time, it is waived. (See 329 U.S. at page 190, 67 S.Ct. 261.) It is held in this circuit by Redmon v. Squier, 9 Cir., 162 F.2d 195, that such failure to raise the point is a waiver.

But petitioner contends that he did not waive the point by failing to raise it within the required time, as he contends that the point was actually raised on his motion to quash, which was timely filed.

The motion to quash (record 68–69) did not specifically state his objection to the jury panel, and did not mention, even in a general way, any asserted violation of the due process clause or general noncompliance with the laws or statutes of the United States. But the motion was confined to the objection that the three year delay of arraignment was in violation of the Fifth Amendment, the Sixth Amendment, and the laws and statutes pertaining to arraignment.

While this may be so, from a literal reading of the motion, the petitioner, nevertheless, asserts that the general objection of violation of due process, and of the laws and statutes of the United States was raised by filing the motion, because in support of his motion to quash, he stated to the court in argument on the motion as follows (R. p. 179): "I address to your Honor a motion to quash the indictment upon the grounds that the same was procured contrary to the laws of the United States, in violation of the constitutional provisos, namely, due process, the equal protections of the law and the statutes in cases concerning the subject of the requisite evidence and character of evidence that is essentially required in order to vote an indictment against an accused and put him to trial."

As I read the above statement, it was not a general charge of denial of due process or a general charge of violation of the laws and statutes of the United States, so as to provide an umbrella for all specific

questions which might thereafter be raised, even for the first time on argument on appeal to the Supreme Court, (such as occurred in Musser v. Utah, 68 S.Ct. 397). It rather appears to have been specifically and only a charge that the "requisite evidence and character of evidence that is essentially required in order to vote an indictment" was in violation of the due process clause, the Sixth Amendment and the laws and statutes of the United States in that particular only.

Whatever might be said for the proposition that a defendant and the lower courts should not be put to guessing as to what might be some day considered as error by the Supreme Court in an exercise of its "powers of supervision over the administration of justice in the federal courts" (328 U. S. 225, 66 S.Ct. 988, 90 L.Ed. 1181, 166 A.L. R. 1412; 329 U.S. 193, 67 S.Ct. 264) it must be conceded that neither the trial court nor the Circuit Court of Appeals could have guessed from the record and proceedings in the trial court that petitioner intended either his motion or the above statement in support thereof to be an objection to the grand jury panel.

Here it must be noted that while the petitioner is urging the invalidity of the grand jury panel as a constitutional question, the dissenting opinion of Justice Frankfurter in the Thiel case indicated that no constitutional question was involved. 328 U.S. 227, 66 S.Ct. 984, 90 L. Ed. 1181, 166 A.L.R. 1412. And that in neither the Thiel case, nor the Ballard case majority opinion is there any indication that they held the jury panels to be invalid as being in violation of any constitutional right.

Petitioner relies upon the Thiel case and the Ballard case, so it is not clear, therefore, in precisely what fashion he claims due process was denied him in the selection of the jury panel, unless it be that the Supreme Court having found the grand jury which indicted Ballard to be illegal, it is a denial of due process, not to make the same holding as to petitioner, or that Section 556a of Tit. 18 requiring such an attack to be made within ten days after arraignment its unconstitutional as being a denial of due process.

But in any event, the question as to the validity of a jury panel was specifically raised in the Circuit Court of Appeals on the petition for rehearing (see supplement to petition for rehearing filed in C.C.A. June 11, 1947), after the decision of the Supreme Court in the Ballard case. It was also raised in the petition for certiorari to the Supreme Court (petition page 17) and while both of these petitions were denied by the Circuit and Supreme Courts 68 S.Ct. 81, without opinion, I must accept their denial as their conclusion that the point was not well taken, or had been waived by petitioner. And as indicated at the commencement of this memorandum, I cannot sit as a reviewing court of either the Circuit Court of Appeals or the Supreme Court.

The other point which was discussed at some length on argument, and in the briefs, was that petitioner was deprived of right of trial by jury. In face of the written waiver signed by both the petitioner and his counsel, the position of petitioner is a little vague and tenuous, to say the least.

No physical force or deceit is alleged to have been exercised or practiced upon either petitioner or his counsel. Nor is there said to have been any ignorance on the part of petitioner or his counsel of his right to trial by jury. It seems to sum up to this: that petitioner, after the motion for continuance was denied, consulted with his counsel, and concluded that if it might become necessary for a continuance during the trial, he would fare better at the hands of the Judge, than at the hands of the jury, which might become separated during such continuance. The petitioner was not deprived of anything in this respect. He made a deliberate and consultative choice. He took a calculated risk, in which his counsel joined. If such risk produced a result he did not expect or want, he cannot now be heard to complain that because the result was not to be expected, he was denied a constitutional right, and should be liberated on a writ of habeas corpus.

I have extended the within memorandum more than would be ordinarily necessary, but have done so in order that counsel

might not be required to guess as to the basis of my rulings.

The writ is denied.

The petitioner is ordered remanded, and his bail is exonerated upon his delivery into custody.